**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CCO CONDO PORTFOLIO (AZ) JUNIOR
MEZZANINE, LLC,

                    Plaintiff,

v.

ZIEL FELDMAN and H F Z CAPITAL GROUP
LLC,

                    Defendants.

Case No.

# COMPLAINT

Plaintiff CCO Condo Portfolio (AZ) Junior Mezzanine, LLC, by their undersigned counsel and for their complaint against Defendants, alleges as follows:

## INTRODUCTION

1.      In November 2018, Plaintiff's predecessor, CCO Condo Portfolio (NY) Mezzanine, LLC, as the initial lender and in its capacity as administrative agent (collectively, "**Original Lender**") made four junior mezzanine loans, each of which was for a distinct borrower.

2.      Each of the four loans relates to one of four condominium projects in Manhattan, New York, which were owned by affiliates of Defendants until January 7, 2021.

3.      As a condition for making all four junior mezzanine loans, Original Lender required that Defendants execute and deliver to Original Lender various guaranties for which Defendants jointly and severally guaranteed, among other things, punctual and complete payment for portions of principal and interest on the loans when such amounts became due and payable, as well as

certain guaranteed obligations related to carrying costs and deficiency amounts, and recourse obligations.[1]

4.     As of November 2019, each borrower defaulted on the respective four loans, and in July 2020, Original Lender gave notice of the default to all four borrowers and the Guarantor Defendants. Original Lender additionally gave the four borrowers notices of acceleration of the amounts due under their respective loans.

5.     The principal and interest, as well as the guaranteed obligations related to carrying costs and deficiency amounts, for each of the four loans remain outstanding.

6.     Defendants have failed to meet their guaranteed obligations as to the guaranties, which include, but are not limited to, the obligation to repay certain amounts due under the loans.

7.     Original Lender assigned all of its interests in the loans to Plaintiff.

8.     Plaintiff foreclosed on the collateral securing the loans via a UCC foreclosure sale held on January 7, 2021 and became the indirect owner of the properties as of such date.

9.     Accordingly, Plaintiff brings this action to enforce the guaranties, and recover from Defendants the various amounts, including interest and costs, due under the guaranties.

## PARTIES

10.     Plaintiff CCO Condo Portfolio (AZ) Junior Mezzanine, LLC is a limited liability company formed under the laws of the State of Arizona, with its principal place of business in Arizona and having an address of c/o CIM Group, 2398 E. Camelback Rd., 4th Floor, Phoenix, Arizona 85016.

---

[1]     In addition, for each of the four loans, Defendants executed and delivered another guaranty relating to, inter alia, cost over-runs and completion. As the claims related to the cost over-runs and completion obligations have not yet ripened, Plaintiff reserves all rights and remedies with respect to any claims for amounts due under such guaranty including all rights to amend the Complaint to include such claims.

11.     Plaintiff CCO Condo Portfolio (AZ) Junior Mezzanine, LLC is 100 percent owned by CIM Real Estate Finance Trust, Inc., a Maryland corporation with its principal place of business in Maryland. All of the membership interests of Plaintiff CCO Condo Portfolio (AZ) Junior Mezzanine, LLC are held by CIM Real Estate Finance Trust, Inc., a Maryland corporation with its principal place of business in Maryland.

12.     Defendant Ziel Feldman is an individual residing in New York, New York with an address of c/o H F Z Capital Group LLC, 600 Madison Avenue, Fifteenth Floor, New York, New York 10022. Mr. Feldman is a resident and citizen of the State of New York.

13.     Defendant H F Z Capital Group LLC is a limited liability company formed under the laws of the State of New York, with its principal place of business in New York, having an address of 600 Madison Avenue, Fifteenth Floor, New York, New York 10022.

14.     The owners of Defendant H F Z Capital Group LLC are Defendant Ziel Feldman, Helene S. Feldman, and the Feldman Family 2007 Trust. Defendant Ziel Feldman, Helene S. Feldman, and the Feldman Family 2007 Trust together hold all of the membership interests of Defendant H F Z Capital Group LLC.

15.     Helene S. Feldman, a nonparty to this action, upon information and belief, is an individual residing in New York, New York. Ms. Feldman is a resident and citizen of the State of New York.

16.     Helene S. Feldman is the trustee under the Feldman Family 2007 Trust, which is a traditional trust and not a business trust. The beneficiaries of the Feldman Family 2007 Trust are Leila Feldman, Jordan Feldman and Adam Feldman. Leila Feldman is an individual residing in New York, New York with an address at 101 W 24th Street, New York, New York. Jordan Feldman is an individual residing in New York, New York with an address at 50 Murray Street,

New York, New York. Adam Feldman is an individual residing in New York, New York with an address at 22 W 15th Street, New York, New York.  Thus, the trustee and all beneficiaries of the Feldman Family 2007 Trust are residents and citizens of the State of New York.

17.     Based upon the foregoing,  Defendant H F Z Capital Group LLC is a resident and citizen of the State of New York and is not a resident or citizen of the State of Arizona or the State of Maryland.

18.     Based on the foregoing,  all members of Defendant H F Z Capital Group LLC, and any submembers of any members of Defendant H F Z Capital Group LLC, reside in, are citizens of, or have their principal place of business only in the State of New York, and in no other state.

19.     Upon information  and belief, no members of Plaintiff, nor any submembers of any members of Plaintiff, either reside in, are citizens of, or have their principal place of business in the State of New York.

## JURISDICTION AND VENUE

20.     The Court has subject matter jurisdiction  over this action pursuant to 28 U.S.C. Section 1332(a)(2) because (a) Plaintiff is a citizen of the State of Maryland, and Defendants are citizens of the State of New York, and (b) the amount in controversy far exceeds $75,000, exclusive of interest and costs.

21.     The Court has personal jurisdiction  over Defendants because Defendants are found in the State of New York, regularly and systematically  conduct business in New York, and avail themselves of New York.

22.     The Court has personal jurisdiction  over Defendants because the causes of action set forth herein arise from Defendants' transaction of business in New York.

23.     The Court has personal jurisdiction over Defendants because Defendants, upon information and belief, own, use, or possess real property situated within the State of New York and are found in the State of New York.

24.     Venue in this District is proper pursuant to 28 U.S.C. Section 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims herein occurred in this District. In the alternative, venue in this District is proper pursuant to 28 U.S.C. Section 1391(b)(3) because Defendants are subject to personal jurisdiction in this District.

25.     Additionally, pursuant to the applicable guaranties and loan agreements (defined below), Defendant H F Z Capital Group LLC and Defendant Ziel Feldman agreed that service of process at the New York address set forth in the governing loan agreements and paragraphs 12 and 13 herein will constitute effective service of process upon Defendants.

26.     Further, pursuant to the applicable guaranties and loan agreements (defined below), Defendant H F Z Capital Group LLC and Defendant Ziel Feldman agreed to submit to jurisdiction in federal court in the State of New York and further agreed to waive any objections based on venue.

### FACTS[2]

### I.     Defendants' Failure to Meet Their Guaranteed Obligations for the Four Junior Mezzanine Loans

27.     In November 2018, Original Lender made four junior mezzanine loans, each of which was for a distinct borrower. Each of the four loans relates to one of four condominium projects in Manhattan, New York, which were owned by affiliates of Defendants until January 7, 2021.

---

[2]     Unless otherwise defined, all capitalized terms used herein shall have the meanings ascribed to them in the applicable Guaranties and Loan Documents.

28.     Certain obligations relating to all four loans were guaranteed by Defendants herein pursuant to five guaranties for each of the four loans, for a total of 20 guaranties.

29.     In November 2019, all four borrowers defaulted under their respective loans.  In July 2020, Original Lender provided notices of default to both borrowers and Defendants and subsequently delivered notices of demand for the amounts due under the applicable guaranties to Defendants.

30.     On January 7, 2021, Plaintiff foreclosed on the collateral securing the loans via a UCC foreclosure sale and became the indirect owner of the properties as of such date. That foreclosure did not extinguish any of the obligations that are the subject of this complaint.

31.     The amounts, including interest and costs, due under the applicable guaranties remain outstanding.

32.     The factual allegations herein are organized based on the name of the borrower on each of the four junior mezzanine loans as follows:

      a.     HFZ 88 Lexington Avenue Junior Mezzanine LLC

            i.     Defendants' Liability under the Payment Guaranty

            ii.     Defendants' Liability under the Carrying Costs Guaranty

            iii.     Defendants' Liability under the Supplemental Costs Guaranty

            iv.     Defendants' Liability under the Recourse Guaranty

      b.     HFZ 90 Lexington Avenue Junior Mezzanine LLC

            i.     Defendants' Liability under the Payment Guaranty

            ii.     Defendants' Liability under the Carrying Costs Guaranty

            iii.     Defendants' Liability under the Supplemental Costs Guaranty

            iv.     Defendants' Liability under the Recourse Guaranty

    c.      HFZ 235 West 75th Street Junior Mezzanine LLC

        i.      Defendants' Liability under the Payment Guaranty

        ii.      Defendants' Liability under the Carrying Costs Guaranty

        iii.      Defendants' Liability under the Supplemental Costs Guaranty

        iv.      Defendants' Liability under the Recourse Guaranty

    d.      HFZ 301 West 53rd Street Junior Mezzanine LLC

        i.      Defendants' Liability under the Payment Guaranty

        ii.      Defendants' Liability under the Carrying Costs Guaranty

        iii.      Defendants' Liability under the Supplemental Costs Guaranty

        iv.      Defendants' Liability under the Recourse Guaranty

**A.**    **HFZ 88 Lexington Avenue Junior Mezzanine LLC**

33.    On or about November 30, 2018, HFZ 88 Lexington Avenue Junior Mezzanine LLC ("**88 Lexington Avenue Borrower**") requested that Original Lender make a loan to Borrower in the original principal amount of up to $24,960,571.00 (the "**88 Lexington Avenue Loan**").

34.    On or about November 30, 2018, Borrower and Original Lender executed a Junior Mezzanine Loan and Security Agreement in the original principal amount of $24,960,571.00, payable to Original Lender (as amended from time to time, the "**88 Lexington Avenue Loan Agreement**"). A copy of the 88 Lexington Avenue Loan Agreement is attached hereto as Exhibit A.

35.    On or about November 30, 2018, Borrower executed a Junior Mezzanine Loan Promissory Note in favor of Original Lender pursuant to the terms and conditions of the Junior Mezzanine Loan and Security Agreement (as amended, restated, replaced, supplemented or

otherwise modified from time to time, the "**88 Lexington Avenue Note**"). A copy of the 88 Lexington Avenue Note is attached hereto as Exhibit B.

36.     Guarantors were the owners of an indirect interest in the 88 Lexington Avenue Borrower until January 7, 2021.

37.     As a condition to Original Lender's making the 88 Lexington Avenue Loan, Original Lender required that Defendant H F Z Capital Group LLC ("**H F Z**") and Defendant Ziel Feldman ("**Feldman**") (together with "H F Z," jointly and severally, and collectively, the "**Guarantors**" or "**Defendants**") execute and deliver to Original Lender certain guaranties in favor of Original Lender, including the Junior Mezzanine Payment Guaranty, dated November 30, 2018 (the "**88 Lexington Avenue Payment Guaranty**"), the Junior Mezzanine Guaranty of Carrying Costs, dated November 30, 2018 (the "**88 Lexington Avenue Carrying Costs Guaranty**"), the Junior Mezzanine Supplemental Payment Guaranty, dated November 30, 2018 (the "**88 Lexington Avenue Supplemental Payment Guaranty**") and the Junior Mezzanine Guaranty of Recourse Obligations, dated November 30, 2018 (the "**88 Lexington Avenue Recourse Guaranty**").

38.     Pursuant to Section 1.1 of the 88 Lexington Avenue Payment Guaranty, Guarantors, Guarantors, as primary obligors, jointly and severally guarantee the punctual and complete payment, as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise, of the repayment of a portion of principal and interest on the 88 Lexington Avenue Loan, in an amount not to exceed $1,383,500.00 (exclusive of costs of enforcement). A copy of the 88 Lexington Avenue Payment Guaranty is attached hereto as Exhibit C.

39.     Pursuant to the 88 Lexington Avenue Carrying Costs Guaranty, Defendants, jointly and severally, guaranteed the punctual and complete payment and performance of the Guaranteed

Obligations, which include, without limitation, (a) 88 Lexington Avenue Borrower's obligations to pay interest payable at the Interest Rate or the Default Rate, as applicable under the 88 Lexington Avenue Loan, including any payment-in-kind ("**PIK'd**") interest, (b) Senior Mezzanine Borrower's (as defined in the 88 Lexington Avenue Loan Agreement) obligations to pay interest payable under the Senior Mezzanine Loan (as defined in the 88 Lexington Avenue Loan Agreement), (c) Mortgage Borrower's (as defined in the 88 Lexington Avenue Loan Agreement) obligations to pay interest payable under the Mortgage Loan (as defined in the 88 Lexington Avenue Loan Agreement), (d) 88 Lexington Avenue Borrower's obligation to cause Mortgage Borrower (as defined in the 88 Lexington Avenue Loan Agreement) to pay Impositions, and (e) 88 Lexington Avenue Borrower's obligation to reimburse Administrative Agent for costs and expenses under Section 20.2.1 of the 88 Lexington Avenue Loan Agreement (collectively, the "**Guaranteed Obligations under the 88 Lexington Avenue Carrying Costs Guaranty**"). A copy of the 88 Lexington Avenue Carrying Costs Guaranty is attached hereto as Exhibit D.

40.     Pursuant to the 88 Lexington Avenue Supplemental Payment Guaranty, Defendants, jointly and severally, guaranteed the punctual and complete payment as and when the same shall be due and payable, of an amount equal to the positive difference, as of the date of calculation, of (i) the sum of (x) the Debt Service Reserve Deficiency Amount (as defined in the 88 Lexington Avenue Supplemental Payment Guaranty) plus (y) the Operating Expense Reserve Deficiency Amount (as defined in the 88 Lexington Avenue Supplemental Payment Guaranty), less (ii) the aggregate amount actually on deposit in each of the Operating Expense Account (as defined in the 88 Lexington Avenue Supplemental Payment Guaranty) and the Debt Service Account (as defined in the 88 Lexington Avenue Supplemental Payment Guaranty).

41.     Pursuant to the 88 Lexington Avenue Recourse Guaranty, Defendants, jointly and severally, guaranteed the punctual and complete payment, fulfillment and performance, as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise, of all obligations of Borrower for which Borrower is stated to be personally liable pursuant to Section 18.2 of the 88 Lexington Avenue Loan Agreement.

42.     Events of Default have occurred under the 88 Lexington Avenue Loan pursuant to, among others, Sections 17.1(a)(i)(B), 17.1(a)(ii), 17.1(a)(xii), 17.1(a)(xxiii), 17.1(a)(xxvi), 17.1(a)(xli), 17.1(a)(xlii) and 17.1(a)(xliii) of the 88 Lexington Avenue Loan Agreement, and continued to occur until January 7, 2021 when Plaintiff gained control of the properties.

43.     By letter dated July 2, 2020, Original Lender notified Guarantors that Events of Default, as defined in the 88 Lexington Avenue Loan Agreement, had occurred under the loan agreement as a result of, *inter alia,* 88 Lexington Avenue Borrower's failure to pay all amounts due under the 88 Lexington Avenue Loan on January 9, 2020, February 7, 2020, March 9, 2020, April 9, 2020, May 8, 2020, and June 9, 2020 (the "**88 Lexington Avenue Notice of Default to Guarantors**"). A copy of the 88 Lexington Avenue Notice of Default to Guarantors is attached hereto as Exhibit E.

44.     By letter dated July 9, 2020, Original Lender (i) notified Borrower that Events of Default continued to exist and that the 88 Lexington Avenue Loan had been accelerated and (ii) demanded immediate payment of all amounts due under the 88 Lexington Avenue Loan, including, without limitation, the outstanding principal balance, accrued interest, default interest, and PIK'd Interest (the "**Acceleration Notice to 88 Lexington Avenue Borrower**"). A copy of the Acceleration Notice to 88 Lexington Avenue Borrower is attached hereto as Exhibit F.

45.    As of March 22, 2021, the outstanding principal balance due under the 88 Lexington Avenue Note and the other loan documents (inclusive of protective advances) was $27,141,892.16 in addition to, *inter alia*, accrued and unpaid interest, default interest, and late fees. The foregoing is in addition to certain other costs incurred by Original Lender and Plaintiff as a result of the aforementioned defaults including, without limitation, collection costs and attorneys' fees.

### (1)    Defendants' Liability under the 88 Lexington Avenue Payment Guaranty

46.    As of the date hereof, both principal and interest on the 88 Lexington Avenue Loan remain outstanding.

47.    Accordingly, under the 88 Lexington Avenue Payment Guaranty, Guarantors are fully and personally liable for repayment of both principal and interest on the 88 Lexington Avenue Loan, in an amount not to exceed $1,383,500.00 (the "**Guarantors' Liability on the 88 Lexington Avenue Payment Guaranty**").

48.    By correspondence dated July 10, 2020, Original Lender notified the Guarantors that the Guarantors' Liability on the 88 Lexington Avenue Payment Guaranty was due and made demand on Guarantors for payment in full of the Guarantors' liability (the "**88 Lexington Avenue Payment Guaranty Demand**"). A copy of the 88 Lexington Avenue Payment Guaranty Demand is attached hereto as Exhibit G.

49.    The outstanding principal due under the 88 Lexington Avenue Loan is far in excess of the amount due under the 88 Lexington Avenue Payment Guaranty.

50.    As of the date hereof, Guarantors have not paid a portion of the principal and interest of the 88 Lexington Avenue Loan under the 88 Lexington Avenue Payment Guaranty.

### (2) Defendants' Liability under the 88 Lexington Avenue Carrying Costs Guaranty

51.    Additionally, under the 88 Lexington Avenue Carrying Costs Guaranty, Guarantors are fully and personally liable for the Guaranteed Obligations under the 88 Lexington Avenue Carrying Costs Guaranty in a minimum amount of $6,560,408.75,[3] which amount covers, but is not limited to, the debt service due on the 88 Lexington Avenue Loan and the related senior mezzanine and mortgage loans as of the date of the 88 Lexington Avenue Carrying Costs Guaranty Demand (as defined below) (the "**Guarantors' Liability on the 88 Lexington Avenue Carrying Costs Guaranty**").

52.    By correspondence dated July 16, 2020, Original Lender notified the Guarantors that the Guarantors' Liability on the 88 Lexington Avenue Carrying Costs Guaranty was due and made demand on Guarantors for payment in full of the Guarantors' liability (the "**88 Lexington Avenue Carrying Costs Guaranty Demand**"). A copy of 88 Lexington Avenue Carrying Costs Guaranty Demand is attached hereto as Exhibit H.

53.    As of the date hereof, Guarantors have not paid any amount towards the Guaranteed Obligations under the 88 Lexington Avenue Carrying Costs Guaranty.

### (3) Defendants' Liability under the 88 Lexington Avenue Supplemental Payment Guaranty

54.    Under the 88 Lexington Avenue Supplemental Payment Guaranty, Guarantors are fully and personally liable for any unpaid Debt Service Reserve Deficiency Amount (as defined in the 88 Lexington Avenue Supplemental Payment Guaranty) as well as any unpaid Operating Expense Reserve Deficiency Amount (as defined in the 88 Lexington Avenue Supplemental Payment Guaranty).

---

[3]    The amount does not include PIK'd Interest.

55.     By correspondence dated July 29, 2020, Original Lender requested Mortgage Borrower (as defined in the 88 Lexington Avenue Loan Agreement) to pay the Operating Expense Reserve Deficiency Amount calculated as of July 24, 2020, or $755,376.52 (the "**88 Lexington Avenue Operating Expense Reserve Deficiency Amount**"), on or before August 13, 2020.  The 88 Lexington Avenue Operating Expense Reserve Deficiency Amount has not been paid.

56.     By correspondence dated July 29, 2020, Original Lender requested Mortgage Borrower (as defined in the 88 Lexington Avenue Loan Agreement) to pay the Debt Service Reserve Deficiency Amount calculated as of July 24, 2020, or $4,532,259.15 (the "**88 Lexington Avenue Debt Service Reserve Deficiency Amount**"), on or before August 7, 2020.  By correspondence dated August 11, 2020, Original Lender made a second request to Mortgage Borrower (as defined in the 88 Lexington Avenue Loan Agreement) to pay the 88 Lexington Avenue Debt Service Reserve Deficiency Amount on or before August 14, 2020.  The 88 Lexington Avenue Debt Service Reserve Deficiency Amount has not been paid.

57.     By correspondence dated August 18, 2020, Original Lender notified the Guarantors that the Guarantors' Liability on the 88 Lexington Avenue Supplemental Payment Guaranty was due and made demand on Guarantors for payment in full of the Guarantors' liability (the "**88 Lexington Avenue Supplemental Payment Guaranty Demand**").  A copy of the 88 Lexington Avenue Supplemental Payment Guaranty Demand is attached hereto as Exhibit I.

58.     As of the date hereof, Guarantors have not paid any amount towards either the 88 Lexington Avenue Operating Expense Reserve Deficiency Amount or the 88 Lexington Avenue Debt Service Reserve Deficiency Amount pursuant to the 88 Lexington Avenue Supplemental Payment Guaranty.

   **(4)    Defendants' Liability under the 88 Lexington Avenue Recourse Guaranty**

59.     Additionally, under the 88 Lexington Avenue Recourse Guaranty, Guarantors are fully and personally liable for the Guaranteed Obligations under the 88 Lexington Avenue Recourse Guaranty in a minimum amount of $1,670,063.54, which amount covers, but is not limited to, the Deferred Senior Mezzanine Origination Fee (as defined in the 88 Lexington Avenue Loan Agreement) as of the date of the 88 Lexington Avenue Recourse Guaranty Demand (as defined below) (the "**Guarantors' Liability on the 88 Lexington Avenue Recourse Guaranty**").

60.     By correspondence dated July 17, 2020, Original Lender notified the Guarantors that a portion of the Guarantors' Liability on the 88 Lexington Avenue Recourse Guaranty covering the Deferred Senior Mezzanine Origination Fee (and interest thereon) was then due and made demand on Guarantors for payment in full of such amount (the "**88 Lexington Avenue Recourse Guaranty Demand**"). A copy of 88 Lexington Avenue Recourse Guaranty Demand is attached hereto as Exhibit J.

61.     As of the date hereof, Guarantors' Liability on the 88 Lexington Avenue Recourse Guaranty remains unpaid.

**B.      HFZ 90 Lexington Avenue Junior Mezzanine LLC**

62.     On or about November 30, 2018, HFZ 90 Lexington Avenue Junior Mezzanine LLC ("**90 Lexington Avenue Borrower**") requested that Original Lender, make a loan to 90 Lexington Avenue Borrower in the original principal amount of up to $15,439,895.00 (the "**90 Lexington Avenue Loan**").

63.     On or about November 30, 2018, 90 Lexington Avenue Borrower and Original Lender executed a Junior Mezzanine Loan and Security Agreement in the original principal amount of $15,439,895.00, payable to Original Lender (as amended from time to time, the "**90**

**Lexington Avenue Loan Agreement**"). A copy of the 90 Lexington Avenue Loan Agreement is attached hereto as Exhibit K.

64. On or about November 30, 2018, 90 Lexington Avenue Borrower executed a Junior Mezzanine Loan Promissory Note in favor of Original Lender pursuant to the terms and conditions of the Junior Mezzanine Loan and Security Agreement (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "**90 Lexington Avenue Note**"). A copy of the 90 Lexington Avenue Note is attached hereto as Exhibit L.

65. Guarantors were the owners of an indirect interest in the 90 Lexington Avenue Borrower until January 7, 2021.

66. As a condition to Original Lender's making the 90 Lexington Avenue Loan, Original Lender required that Defendants execute and deliver to Original Lender certain guaranties in favor of Original Lender, including the Junior Mezzanine Payment Guaranty, dated November 30, 2018 (the "**90 Lexington Avenue Payment Guaranty**"), the Junior Mezzanine Guaranty of Carrying Costs, dated November 30, 2018 (the "**90 Lexington Avenue Carrying Costs Guaranty**"), the Junior Mezzanine Supplemental Payment Guaranty, dated November 30, 2018 (the "**90 Lexington Avenue Supplemental Payment Guaranty**") and the Junior Mezzanine Guaranty of Recourse Obligations, dated November 30, 2018 (the "**90 Lexington Avenue Recourse Guaranty**").

67. Pursuant to Section 1.1 of the 90 Lexington Avenue Payment Guaranty, Guarantors, as primary obligors, jointly and severally guarantee the punctual and complete payment, as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise, of the repayment of a portion of principal and interest on the 90 Lexington

Avenue Loan, in an amount not to exceed $832,000.00 (exclusive of costs of enforcement). A copy of the 90 Lexington Avenue Payment Guaranty is attached Exhibit M.

68.     Pursuant to the 90 Lexington Avenue Carrying Costs Guaranty, Defendants, jointly and severally, guaranteed the punctual and complete payment and performance of the Guaranteed Obligations, which include, without limitation, (a) 90 Lexington Avenue Borrower's obligations to pay interest payable at the Interest Rate or the Default Rate, as applicable under the 90 Lexington Avenue Loan, including any PIK'd Interest, (b) Senior Mezzanine Borrower's (as defined in the 90 Lexington Avenue Loan Agreement) obligations to pay interest payable under the Senior Mezzanine Loan (as defined in the 90 Lexington Avenue Loan Agreement), (c) Mortgage Borrower's (as defined in the 90 Lexington Avenue Loan Agreement) obligations to pay interest payable under the Mortgage Loan (as defined in the 90 Lexington Avenue Loan Agreement), (d) 90 Lexington Avenue Borrower's obligation to cause 90 Lexington Avenue Mortgage Borrower (as defined in the 90 Lexington Avenue Loan Agreement) to pay Impositions, and (e) 90 Lexington Avenue Borrower's obligation to reimburse Administrative Agent for costs and expenses under Section 20.2.1 of the 90 Lexington Avenue Loan Agreement (collectively, the "**Guaranteed Obligations under the 90 Lexington Avenue Carrying Costs Guaranty**"). A copy of the 90 Lexington Avenue Carrying Costs Guaranty is attached Exhibit N.

69.     Pursuant to the 90 Lexington Avenue Supplemental Payment Guaranty, Defendants, jointly and severally, guaranteed the punctual and complete payment as and when the same shall be due and payable, of an amount equal to the positive difference, as of the date of calculation, of (i) the sum of (x) the Debt Service Reserve Deficiency Amount (as defined in the 90 Lexington Avenue Supplemental Payment Guaranty) plus (y) the Operating Expense Reserve Deficiency Amount (as defined in the 90 Lexington Avenue Supplemental Payment Guaranty),

less (ii) the aggregate amount actually on deposit in each of the Operating Expense Account (as defined in the 90 Lexington Avenue Supplemental Payment Guaranty) and the Debt Service Account (as defined in the 90 Lexington Avenue Supplemental Payment Guaranty).

70.     Pursuant to the 90 Lexington Avenue Recourse Guaranty, Defendants, jointly and severally, guaranteed the punctual and complete payment, fulfillment and performance, as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise, of all obligations of Borrower for which Borrower is stated to be personally liable pursuant to Section 18.2 of the 90 Lexington Avenue Loan Agreement.

71.     Events of Default have occurred under the 90 Lexington Avenue Loan pursuant to, among others, Sections 17.1(a)(i)(B), 17.1(a)(ii), 17.1(a)(xii), 17.1(a)(xxiii), 17.1(a)(xxvi), 17.1(a)(xli), 17.1(a)(xlii) and 17.1(a)(xliii) of the 90 Lexington Avenue Loan Agreement, and continued to occur until January 7, 2021 when Plaintiff gained control of the properties.

72.     By letter dated July 2, 2020, Original Lender notified Guarantors that Events of Default, as defined in the 90 Lexington Avenue Loan Agreement, had occurred under the loan agreement as a result of, *inter alia,* 90 Lexington Avenue Borrower's failure to pay all amounts due under the 90 Lexington Avenue Loan on January 9, 2020, February 7, 2020, March 9, 2020, April 9, 2020, May 8, 2020, and June 9, 2020 (the "**90 Lexington Avenue Notice of Default to Guarantors**").  A copy of the 90 Lexington Avenue Notice of Default to Guarantors is attached hereto as Exhibit O.

73.     By letter dated July 9, 2020, Original Lender (i) notified 90 Lexington Avenue Borrower that Events of Default continued to exist and that the 90 Lexington Avenue Loan had been accelerated, and (ii) demanded immediate payment of all amounts due under the 90 Lexington Avenue Loan, including, without limitation, the outstanding principal balance, accrued interest,

default interest, and PIK'd Interest (the "**Acceleration Notice to 90 Lexington Avenue Borrower**"). A copy of the Acceleration Notice to 90 Lexington Avenue Borrower is attached hereto as Exhibit P.

74. As of March 22, 2021, the outstanding principal balance due under the 90 Lexington Avenue Note and the other loan documents (inclusive of protective advances) was $16,575,313.45 in addition to, *inter alia*, accrued and unpaid interest, default interest, and late fees. The foregoing is in addition to certain other costs incurred by Original Lender and Plaintiff as a result of the aforementioned defaults including, without limitation, collection costs and attorneys' fees.

### (1) Defendant's Liability under the 90 Lexington Avenue Payment Guaranty

75. As of the date hereof, both principal and interest on the 90 Lexington Avenue Loan remain outstanding.

76. Accordingly, under the 90 Lexington Avenue Payment Guaranty, Guarantors are fully and personally liable for repayment of both principal and interest on the 90 Lexington Avenue Loan, in an amount not to exceed $832,000.00 (the "**Guarantors' Liability on the 90 Lexington Avenue Payment Guaranty**").

77. By correspondence dated July 10, 2020, Original Lender notified the Guarantors that the Guarantors' Liability on the 90 Lexington Avenue Payment Guaranty was due and made demand on Guarantors for payment in full of the Guarantors' liability (the "**90 Lexington Avenue Payment Guaranty Demand**"). A copy of the 90 Lexington Avenue Payment Guaranty Demand is attached hereto as Exhibit Q.

78. The outstanding principal due under the 90 Lexington Avenue Loan is now far in excess of the amount due under the 90 Lexington Avenue Payment Guaranty.

79.     As of the date hereof, Guarantors have not paid a portion of the principal and interest of the 90 Lexington Avenue Loan.

### (2)     Defendant's Liability under the 90 Lexington Avenue Carrying Costs Guaranty

80.     Additionally, under the 90 Lexington Avenue Carrying Costs Guaranty, Guarantors are fully and personally liable for the Guaranteed Obligations under the 90 Lexington Avenue Carrying Costs Guaranty in a minimum amount of $3,855,184.74,[4] which amount covers, but is not limited to, the debt service due on the 90 Lexington Avenue Loan and the related senior mezzanine and mortgage loans as of the date of the 90 Lexington Avenue Carrying Costs Guaranty Demand (as defined below) (the "**Guarantors' Liability on the 90 Lexington Avenue Carrying Costs Guaranty**").

81.     By correspondence dated July 16, 2020, Original Lender notified the Guarantors that the Guarantors' Liability on the 90 Lexington Avenue Carrying Costs Guaranty was due and made demand on Guarantors for payment in full of the Guarantors' liability (the "**90 Lexington Avenue Carrying Costs Guaranty Demand**"). A copy of 90 Lexington Avenue Carrying Costs Guaranty Demand is attached hereto as Exhibit R.

### (3)     Defendants' Liability under the 90 Lexington Avenue Supplemental Payment Guaranty

82.     Under the 90 Lexington Avenue Supplemental Payment Guaranty, Guarantors are fully and personally liable for any unpaid Debt Service Reserve Deficiency Amount (as defined in the 90 Lexington Avenue Supplemental Payment Guaranty) as well as any unpaid Operating Expense Reserve Deficiency Amount (as defined in the 90 Lexington Avenue Supplemental Payment Guaranty).

---

[4]     The amount does not include PIK'd Interest.

83.     By correspondence dated July 29, 2020, Original Lender requested Mortgage Borrower (as defined in the 90 Lexington Avenue Loan Agreement) to pay the Operating Expense Reserve Deficiency Amount calculated as of July 24, 2020, or $458,321.36 (the "**90 Lexington Avenue Operating Expense Reserve Deficiency Amount**"), on or before August 13, 2020.  The 90 Lexington Avenue Operating Expense Reserve Deficiency Amount has not been paid.

84.     By correspondence dated July 29, 2020, Original Lender requested Mortgage Borrower (as defined in the 90 Lexington Avenue Loan Agreement) to pay the Debt Service Reserve Deficiency Amount calculated as of July 24, 2020, or $2,749,928.15 (the "**90 Lexington Avenue Debt Service Reserve Deficiency Amount**"), on or before August 7, 2020.  By correspondence dated August 11, 2020, Original Lender made a second request to Mortgage Borrower (as defined in the 90 Lexington Avenue Loan Agreement) to pay the 90 Lexington Avenue Debt Service Reserve Deficiency Amount on or before August 14, 2020. The 90 Lexington Avenue Debt Service Reserve Deficiency Amount has not been paid.

85.     By correspondence dated August 18, 2020, Original Lender notified the Guarantors that the Guarantors' Liability on the 90 Lexington Avenue Supplemental Payment Guaranty was due and made demand on Guarantors for payment in full of the Guarantors' liability (the "**90 Lexington Avenue Supplemental Payment Guaranty Demand**").  A copy of 90 Lexington Avenue Supplemental Payment Guaranty Demand is attached hereto as Exhibit S.

86.     As of the date hereof, Guarantors have not paid any amount towards either the 90 Lexington Avenue Operating Expense Reserve Deficiency Amount or the 90 Lexington Avenue Debt Service Reserve Deficiency Amount pursuant to the 90 Lexington Avenue Supplemental Payment Guaranty.

**(4)     Defendants' Liability under the 90 Lexington Avenue Recourse Guaranty**

87.     Additionally, under the 90 Lexington Avenue Recourse Guaranty, Guarantors are fully and personally liable for the Guaranteed Obligations under the 90 Lexington Avenue Recourse Guaranty in a minimum amount of $1,004,528.06, which amount covers, but is not limited to, the Deferred Senior Mezzanine Origination Fee (as defined in the 90 Lexington Avenue Loan Agreement) as of the date of the 90 Lexington Avenue Recourse Guaranty Demand (as defined below) (the "**Guarantors' Liability on the 90 Lexington Avenue Recourse Guaranty**").

88.     By correspondence dated July 17, 2020, Original Lender notified the Guarantors that a portion of the Guarantors' Liability on the 90 Lexington Avenue Recourse Guaranty covering the Deferred Senior Mezzanine Origination Fee (and interest thereon) was then due and made demand on Guarantors for payment in full of such amount (the "**90 Lexington Avenue Recourse Guaranty Demand**").  A copy of 90 Lexington Avenue Recourse Guaranty Demand is attached hereto as Exhibit T.

89.     As of the date hereof, Guarantors' Liability on the 90 Lexington Avenue Recourse Guaranty remains unpaid.

**C.     HFZ 235 West 75th Street Junior Mezzanine LLC**

90.     On or about November 30, 2018, HFZ 235 West 75th Street Junior Mezzanine LLC ("**235 West 75th Street Borrower**") requested that Original Lender make a loan to 235 West 75th Street Borrower in the original principal amount of up to $38,755,787.00 (the "**235 West 75th Street Loan**").

91.     On or about November 30, 2018, 235 West 75th Street Borrower and Original Lender executed a Junior Mezzanine Loan and Security Agreement in the original principal amount of $38,755,787.00, payable to Original Lender (as amended from time to time, the "**235**

**West 75th Street Loan Agreement**"). A copy of the 235 West 75th Street Loan Agreement is attached hereto as Exhibit U.

92.     On or about November 30, 2018, 235 West 75th Street Borrower executed a Junior Mezzanine Loan Promissory Note in favor of Original Lender pursuant to the terms and conditions of the Junior Mezzanine Loan and Security Agreement (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "**235 West 75th Street Note**"). A copy of the 235 West 75th Street Note is attached hereto as Exhibit V.

93.     Guarantors were the owners of an indirect interest in the 235 West 75th Street Borrower until January 7, 2021.

94.     As a condition to Original Lender's making the 235 West 75th Street Loan, Original Lender required that Defendants execute and deliver to Original Lender certain guaranties in favor of Original Lender, including the Junior Mezzanine Payment Guaranty, dated November 30, 2018 (the "**235 West 75th Street Payment Guaranty**"), the Junior Mezzanine Guaranty of Carrying Costs, dated November 30, 2018 (the "**235 West 75th Street Carrying Costs Guaranty**"), the Junior Mezzanine Supplemental Payment Guaranty, dated November 30, 2018 (the "**235 West 75th Street Supplemental Payment Guaranty**") and the Junior Mezzanine Guaranty of Recourse Obligations, dated November 30, 2018 (the "**235 West 75th Street Recourse Guaranty**").

95.     Pursuant to Section 1.1 of the 235 West 75th Street Payment Guaranty, Guarantors, as primary obligors, jointly and severally guarantee the punctual and complete payment, as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise, of the repayment of a portion of principal and interest on the 235 West 75th Street Loan, in an amount not to exceed $1,833,000.00 (exclusive of costs of enforcement). A copy of the 235 West 75th Street Payment Guaranty is attached Exhibit W.

96.     Pursuant to the 235 West 75th Street Carrying Costs Guaranty, Defendants, jointly and severally, guaranteed the punctual and complete payment and performance of the Guaranteed Obligations, which include, without limitation, (a) 235 West 75th Street Borrower's obligations to pay interest payable at the Interest Rate or the Default Rate, as applicable under the 235 West 75th Street Loan, including any PIK'd Interest, (b) Senior Mezzanine Borrower's (as defined in the 235 West 75th Street Loan Agreement) obligations to pay interest payable under the Senior Mezzanine Loan (as defined in the 235 West 75th Street Loan Agreement), (c) Mortgage Borrower's (as defined in the 235 West 75th Street Loan Agreement) obligations to pay interest payable under the Mortgage Loan (as defined in the 235 West 75th Street Loan Agreement), (d) 235 West 75th Street Borrower's obligation to cause Mortgage Borrower (as defined in the 235 West 75th Street Loan Agreement) to pay Impositions, and (e) 235 West 75th Street Borrower's obligation to reimburse Administrative Agent for costs and expenses under Section 20.2.1 of the 235 West 75th Street Loan Agreement (collectively, the "**Guaranteed Obligations under the 235 West 75th Street Carrying Costs Guaranty**"). A copy of the 235 West 75th Street Carrying Costs Guaranty is attached hereto as Exhibit X.

97.     Pursuant to the 235 West 75th Street Supplemental Payment Guaranty, Defendants, jointly and severally, guaranteed the punctual and complete payment as and when the same shall be due and payable, of an amount equal to the positive difference, as of the date of calculation, of (i) the sum of (x) the Debt Service Reserve Deficiency Amount (as defined in the 235 West 75th Street Supplemental Payment Guaranty) plus (y) the Operating Expense Reserve Deficiency Amount (as defined in the 235 West 75th Street Supplemental Payment Guaranty), less (ii) the aggregate amount actually on deposit in each of the Operating Expense Account (as defined in the

235 West 75th Street Supplemental Payment Guaranty) and the Debt Service Account (as defined in the 235 West 75th Street Supplemental Payment Guaranty).

98.      Pursuant to the 235 West 75th Street Recourse Guaranty, Defendants, jointly and severally, guaranteed the punctual and complete payment, fulfillment and performance, as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise, of all obligations of Borrower for which Borrower is stated to be personally liable pursuant to Section 18.2 of the 235 West 75th Street Loan Agreement.

99.      Events of Default have occurred under the 235 West 75th Street Loan pursuant to, among others, Sections 17.1(a)(i)(B), 17.1(a)(ii), 17.1(a)(xii), 17.1(a)(xxiii), 17.1(a)(xxvi), 17.1(a)(xli), 17.1(a)(xlii) and 17.1(a)(xliii) of the 235 West 75th Street Loan Agreement, and continued to occur until January 7, 2021 when Plaintiff gained control of the properties.

100.      By letter dated July 2, 2020, Original Lender notified Guarantors that Events of Default, as defined in the 235 West 75th Street Loan Agreement, had occurred under the loan agreement as a result of, *inter alia,* 235 West 75th Street Borrower's failure to pay all amounts due under the 235 West 75th Street Loan on January 9, 2020, February 7, 2020, March 9, 2020, April 9, 2020, May 8, 2020, and June 9, 2020 (the "**235 West 75th Street Notice of Default to Guarantors**").  A copy of the 235 West 75th Street Notice of Default to Guarantors is attached hereto as Exhibit Y.

101.      By letter dated July 9, 2020, Original Lender (i) notified 235 West 75th Street Borrower that Events of Default continued to exist and that the 235 West 75th Street Loan had been accelerated, and (ii) demanded immediate payment of all amounts due under the 235 West 75th Street Loan, including, without limitation, the outstanding principal balance, accrued interest, default interest, and PIK'd Interest (the "**Acceleration Notice to 235 West 75th Street**

Borrower"). A copy of the Acceleration Notice to 235 West 75th Street Borrower is attached hereto as Exhibit Z.

102. As of March 22, 2021, the outstanding principal balance due under the 235 West 75th Street Note and the other loan documents (inclusive of protective advances) was $40,883,134.81 in addition to, *inter alia*, accrued and unpaid interest, default interest, and late fees. The foregoing is in addition to certain other costs incurred by Original Lender and Plaintiff as a result of the aforementioned defaults including, without limitation, collection costs and attorneys' fees.

### (1) Defendant's Liability under the 235 West 75th Street Payment Guaranty

103. As of the date hereof, both principal and interest on the 235 West 75th Street Loan remain outstanding.

104. Accordingly, under the 235 West 75th Street Payment Guaranty, Guarantors are fully and personally liable for repayment of both principal and interest on the 235 West 75th Street Loan, in an amount not to exceed $1,833,000.00 (the "**Guarantors' Liability on the 235 West 75th Street Payment Guaranty**").

105. By correspondence dated July 10, 2020, Original Lender notified the Guarantors that the Guarantors' Liability on the 235 West 75th Street Payment Guaranty was due and made demand on Guarantors for payment in full of the Guarantors' liability (the "**235 West 75th Street Payment Guaranty Demand**"). A copy of the 235 West 75th Street Payment Guaranty Demand is attached hereto as Exhibit AA.

106. The outstanding principal due under the 235 West 75th Street Loan is now far in excess of the amount due under the 235 West 75th Street Payment Guaranty.

107.    As of the date hereof, Guarantors have not paid a portion of the principal and interest of the 235 West 75th Street Loan.

### (2)    Defendant's Liability under the 235 West 75th Street Carrying Costs Guaranty

108.    Additionally, under the 235 West 75th Street Carrying Costs Guaranty, Guarantors are fully and personally liable for the Guaranteed Obligations under the 235 West 75th Street Carrying Costs Guaranty in a minimum amount of $8,147,412.33,[5] which amount covers, but is not limited to, the debt service due on the 235 West 75th Street Loan and the related senior mezzanine and mortgage loans as of the date of the 235 West 75th Street Carrying Costs Guaranty Demand (as defined below) (the "**Guarantors' Liability on the 235 West 75th Street Carrying Costs Guaranty**").

109.    By correspondence dated July 16, 2020, Original Lender notified the Guarantors that the Guarantors' Liability under the 235 West 75th Street Carrying Costs Guaranty was due and made demand on Guarantors for payment in full of the Guarantors' liability (the "**235 West 75th Street Carrying Costs Guaranty Demand**").  A copy of 235 West 75th Street Carrying Costs Guaranty Demand is attached hereto as Exhibit BB.

110.    As of the date hereof, Guarantors have not paid any amount towards the Guaranteed Obligations under the 235 West 75th Street Carrying Costs Guaranty.

### (3)    Defendants' Liability under the 235 West 75th Street Supplemental Payment Guaranty

111.    Under the 235 West 75th Street Supplemental Payment Guaranty, Guarantors are fully and personally liable for any unpaid Debt Service Reserve Deficiency Amount (as defined in the 235 West 75th Street Supplemental Payment Guaranty) as well as any unpaid Operating

---

[5]    The amount does not include PIK'd Interest.

Expense Reserve Deficiency Amount (as defined in the 235 West 75th Street Supplemental Payment Guaranty).

112.    By correspondence dated July 29, 2020, Original Lender requested Mortgage Borrower (as defined in the 235 West 75th Street Loan Agreement) to pay the Operating Expense Reserve Deficiency Amount calculated as of July 24, 2020, or $1,051,783.04 (the "**235 West 75th Street Operating Expense Reserve Deficiency Amount**"), on or before August 13, 2020. The 235 West 75th Street Operating Expense Reserve Deficiency Amount has not been paid.

113.    By correspondence dated July 29, 2020, Original Lender requested Mortgage Borrower (as defined in the 235 West 75th Street Loan Agreement) to pay the Debt Service Reserve Deficiency Amount calculated as of July 24, 2020, or $5,916,200.56 (the "**235 West 75th Street Debt Service Reserve Deficiency Amount**"), on or before August 7, 2020. By correspondence dated August 11, 2020, Original Lender made a second request to Mortgage Borrower (as defined in the 235 West 75th Street Loan Agreement) to pay the 235 West 75th Street Debt Service Reserve Deficiency Amount on or before August 14, 2020. The 235 West 75th Street Debt Service Reserve Deficiency Amount has not been paid.

114.    By correspondence dated August 18, 2020, Original Lender notified the Guarantors that the Guarantors' Liability on the 235 West 75th Street Supplemental Payment Guaranty was due and made demand on Guarantors for payment in full of the Guarantors' liability (the "**235 West 75th Street Supplemental Payment Guaranty Demand**"). A copy of the 235 West 75th Street Supplemental Payment Guaranty Demand is attached hereto as Exhibit CC.

115.    As of the date hereof, Guarantors have not paid any amount towards either the 235 West 75th Street Operating Expense Reserve Deficiency Amount or 235 West 75th Street

Debt Service Reserve Deficiency Amount pursuant to the 235 West 75th Street Supplemental Payment Guaranty.

### (4)   Defendants' Liability under the 235 West 75th Street Recourse Guaranty

116.   Additionally, under the 235 West 75th Street Recourse Guaranty, Guarantors are fully and personally liable for the Guaranteed Obligations under the 235 West 75th Street Recourse Guaranty in a minimum amount of $2,212,951.44, which amount covers, but is not limited to, the Deferred Senior Mezzanine Origination Fee (as defined in the 235 West 75th Street Loan Agreement) as of the date of the 235 West 75th Street Recourse Guaranty Demand (as defined below) (the "**Guarantors' Liability on the 235 West 75th Street Recourse Guaranty**").

117.   By correspondence dated July 17, 2020, Original Lender notified the Guarantors that a portion of the Guarantors' Liability on the 235 West 75th Street Recourse Guaranty covering the Deferred Senior Mezzanine Origination Fee (and interest thereon) was then due and made demand on Guarantors for payment in full of such amount (the "**235 West 75th Street Recourse Guaranty Demand**"). A copy of 235 West 75th Street Recourse Guaranty Demand is attached hereto as Exhibit DD.

118.   As of the date hereof, Guarantors' Liability on the 235 West 75th Street Recourse Guaranty remains unpaid.

### D.   HFZ 301 West 53rd Street Junior Mezzanine LLC

119.   On or about November 30, 2018, HFZ 301 West 53rd Street Junior Mezzanine LLC ("**301 West 53rd Street Borrower**") requested that Original Lender make a loan to 301 West 53rd Street Borrower in the original principal amount of up to $10,138,300.00 (the "**301 West 53rd Street Loan**").

120.    On or about November 30, 2018, 301 West 53rd Street Borrower and Original Lender executed a Junior Mezzanine Loan and Security Agreement in the original principal amount of $10,138,300.00, payable to Original Lender (as amended from time to time, the "**301 West 53rd Street Loan Agreement**").  A copy of the 301 West 53rd Street Loan Agreement is attached hereto as Exhibit EE.

121.    On or about November 30, 2018, 301 West 53rd Street Borrower executed a Junior Mezzanine Loan Promissory Note in favor of Original Lender pursuant to the terms and conditions of the Junior Mezzanine Loan and Security Agreement (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "**301 West 53rd Street Note**").  A copy of the 301 West 53rd Street Note is attached hereto as Exhibit FF.

122.    Guarantors were the owners of an indirect interest in the 301 West 53rd Street Borrower until January 7, 2021.

123.    As a condition to Original Lender's making the 301 West 53rd Street Loan, Original Lender required that Defendants execute and deliver to Original Lender certain guaranties in favor of Original Lender, including the Junior Mezzanine Payment Guaranty, dated November 30, 2018 (the "**301 West 53rd Street Payment Guaranty**"), the Junior Mezzanine Guaranty of Carrying Costs, dated November 30, 2018 (the "**301 West 53rd Street Carrying Costs Guaranty**"), the Junior Mezzanine Supplemental Payment Guaranty, dated November 30, 2018 (the "**301 West 53rd Street Supplemental Payment Guaranty**") and the Junior Mezzanine Guaranty of Recourse Obligations, dated November 30, 2018 (the "**301 West 53rd Street Recourse Guaranty**").

124.    Pursuant to Section 1.1 of the 301 West 53rd Street Payment Guaranty, Guarantors, as primary obligors, jointly and severally guarantee the punctual and complete payment, as and

when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise, of the repayment of a portion of principal and interest on the 301 West 53rd Street Loan, in an amount not to exceed $951,500.00 (exclusive of costs of enforcement). A copy of the 301 West 53rd Street Payment Guaranty is attached hereto as Exhibit GG.

125.    Pursuant to the 301 West 53rd Street Carrying Costs Guaranty, Defendants, jointly and severally, guaranteed the punctual and complete payment and performance of the Guaranteed Obligations, which include, without limitation, (a) 301 West 53rd Street Borrower's obligations to pay interest payable at the Interest Rate or the Default Rate, as applicable under the 301 West 53rd Street Loan, including any PIK'd Interest, (b) Senior Mezzanine Borrower's (as defined in the 301 West 53rd Street Loan Agreement) obligations to pay interest payable under the 301 West 53rd Street Senior Mezzanine Loan (as defined in the 301 West 53rd Street Loan Agreement), (c) Mortgage Borrower's (as defined in the 301 West 53rd Street Loan Agreement) obligations to pay interest payable under the Mortgage Loan (as defined in the 301 West 53rd Street Loan Agreement), (d) 301 West 53rd Street Borrower's obligation to cause Mortgage Borrower (as defined in the 301 West 53rd Street Loan Agreement) to pay Impositions, and (e) 301 West 53rd Street Borrower's obligation to reimburse Administrative Agent for costs and expenses under Section 20.2.1 of the 301 West 53rd Street Loan Agreement (collectively, the "**Guaranteed Obligations under the 301 West 53rd Street Carrying Costs Guaranty**"). A copy of the 301 West 53rd Street Carrying Costs Guaranty is attached hereto as Exhibit HH.

126.    Pursuant to the 301 West 53rd Street Supplemental Payment Guaranty, Defendants, jointly and severally, guaranteed the punctual and complete payment as and when the same shall be due and payable, of an amount equal to the positive difference, as of the date of calculation, of (i) the sum of (x) the Debt Service Reserve Deficiency Amount (as defined in the 301 West 53rd

Street Supplemental Payment Guaranty) plus (y) the Operating Expense Reserve Deficiency Amount (as defined in the 301 West 53rd Street Supplemental Payment Guaranty), less (ii) the aggregate amount actually on deposit in each of the Operating Expense Account (as defined in the 301 West 53rd Street Supplemental Payment Guaranty) and the Debt Service Account (as defined in the 301 West 53rd Street Supplemental Payment Guaranty).

127.    Pursuant to the 301 West 53rd Street Recourse Guaranty, Defendants, jointly and severally, guaranteed the punctual and complete payment, fulfillment and performance, as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise, of all obligations of Borrower for which Borrower is stated to be personally liable pursuant to Section 18.2 of the 301 West 53rd Street Loan Agreement.

128.    Events of Default have occurred under the 301 West 53rd Street Loan pursuant to, among others, Sections 17.1(a)(i)(B), 17.1(a)(ii), 17.1(a)(xii), 17.1(a)(xxiii), 17.1(a)(xxvi), 17.1(a)(xli), 17.1(a)(xlii) and 17.1(a)(xliii) of the 301 West 53rd Street Loan Agreement, and continued to occur until January 7, 2021 when Plaintiff gained control of the properties.

129.    By letter dated July 2, 2020, Original Lender notified Guarantors that Events of Default, as defined in the 301 West 53rd Street Loan Agreement, had occurred under the loan agreement as a result of, *inter alia,* 301 West 53rd Street Borrower's failure to pay all amounts due under the 301 West 53rd Street Loan on January 9, 2020, February 7, 2020, March 9, 2020, April 9, 2020, May 8, 2020, and June 9, 2020 (the "**301 West 53rd Street Notice of Default to Guarantors**").  A copy of the 301 West 53rd Street Notice of Default to Guarantors is attached hereto as Exhibit II.

130.    By letter dated July 9, 2020, Original Lender (i) notified 301 West 53rd Street Borrower that Events of Default continued to exist and that the 301 West 53rd Street Loan had

been accelerated, and (ii) demanded immediate payment of all amounts due under the 301 West 53rd Street Loan, including, without limitation, the outstanding principal balance, accrued interest, default interest, and PIK'd Interest (the "**Acceleration Notice to 301 West 53rd Street Borrower**"). A copy of the Acceleration Notice to 301 West 53rd Street Borrower is attached hereto as Exhibit JJ.

131. As of March 22, 2021, the outstanding principal balance due under the 301 West 53rd Street Note and the other loan documents (inclusive of protective advances) was $10,474,271.59 in addition to, *inter alia*, accrued and unpaid interest, default interest, and late fees. The foregoing is in addition to certain other costs incurred by Original Lender and Plaintiff as a result of the aforementioned defaults including, without limitation, collection costs and attorneys' fees.

      **(1)    Defendant's Liability under the 301 West 53rd Street Payment Guaranty**

132. As of the date hereof, both principal and interest on the 301 West 53rd Street Loan remain outstanding.

133. Accordingly, under the 301 West 53rd Street Payment Guaranty, Guarantors are fully and personally liable for repayment of both principal and interest on 301 West 53rd Street Loan, in an amount not to exceed $951,500.00 (the "**Guarantors' Liability on the 301 West 53rd Street Payment Guaranty**").

134. By correspondence dated July 10, 2020, Original Lender notified the Guarantors that the Guarantors' Liability on the 301 West 53rd Street Payment Guaranty was due and made demand on Guarantors for payment in full of the Guarantors' liability (the "**301 West 53rd Street Payment Guaranty Demand**"). A copy of the 301 West 53rd Street Payment Guaranty Demand is attached hereto as Exhibit KK.

135.    The outstanding principal due under the 301 West 53rd Street Loan is far in excess of the amount due under the 301 West 53rd Street Payment Guaranty.

136.    As of the date hereof, Guarantors have not paid a portion of the principal and interest of the 301 West 53rd Street Loan.

### (2)    Defendant's Liability under the 301 West 53rd Street Carrying Costs

137.    Additionally, under the 301 West 53rd Street Carrying Costs Guaranty, Guarantors are fully and personally liable for the Guaranteed Obligations under the 301 West 53rd Street Carrying Costs Guaranty in a minimum amount of $1,999,661.28,[6] which amount covers, but is not limited to, the debt service due on the 301 West 53rd Street Loan and the related senior mezzanine and mortgage loans as of the date of the 301 West 53rd Street Carrying Costs Guaranty Demand (as defined below) (the "**Guarantors' Liability on the 301 West 53rd Street Carrying Costs Guaranty**").

138.    By correspondence dated July 16, 2020, Original Lender notified the Guarantors that the Guarantors' Liability on the 301 West 53rd Street Carrying Costs Guaranty was due and made demand on Guarantors for payment in full of the Guarantors' liability (the "**301 West 53rd Street Carrying Costs Guaranty Demand**").  A copy of 301 West 53rd Street Carrying Costs Guaranty Demand is attached hereto as Exhibit LL.

139.    As of the date hereof, Guarantors have not paid any amount towards the Guaranteed Obligations under the 301 West 53rd Street Carrying Costs Guaranty.

### (3)    Defendants' Liability under the 301 West 53rd Street Supplemental Payment Guaranty

140.    Under the 301 West 53rd Street Supplemental Payment Guaranty, Guarantors are fully and personally liable for any unpaid Debt Service Reserve Deficiency Amount (as defined in

---

[6]    The amount does not include PIK'd Interest.

the 301 West 53rd Street Supplemental Payment Guaranty) as well as any unpaid Operating Expense Reserve Deficiency Amount (as defined in the 301 West 53rd Street Supplemental Payment Guaranty).

141.    By correspondence dated July 29, 2020, Original Lender requested Mortgage Borrower (as defined in the 301 West 53rd Street Loan Agreement) to pay the Operating Expense Reserve Deficiency Amount calculated as of July 24, 2020, or $256,286.18 (the "**301 West 53rd Street Operating Expense Reserve Deficiency Amount**"), on or before August 13, 2020.  The 301 West 53rd Street Operating Expense Reserve Deficiency Amount has not been paid.

142.    By correspondence dated July 29, 2020, Original Lender requested Mortgage Borrower (as defined in the 301 West 53rd Street Loan Agreement) to pay the Debt Service Reserve Deficiency Amount calculated as of July 24, 2020, or $1,537,717.07 (the "**301 West 53rd Street Debt Service Reserve Deficiency Amount**"), on or before August 7, 2020.   By correspondence dated August 11, 2020, Original Lender made a second request to Mortgage Borrower (as defined in the as defined in the 301 West 53rd Street Loan Agreement) to pay the 301 West 53rd Street Debt Service Reserve Deficiency Amount on or before August 14, 2020. The 301 West 53rd Street Debt Service Reserve Deficiency Amount has not been paid.

143.    By correspondence dated August 18, 2020, Original Lender notified the Guarantors that the Guarantors' Liability  on the 301 West 53rd Street Supplemental Payment Guaranty was due and made demand on Guarantors for payment in full of the Guarantors' liability (the "**301 West 53rd Street Supplemental Payment Guaranty Demand**").  A copy of the 301 West 53rd Street Supplemental Payment Guaranty Demand is attached hereto as Exhibit MM.

144.    As of the date hereof, Guarantors have not paid any amount towards either the 301 West 53rd Street Operating Expense Reserve Deficiency Amount or 301 West 53rd Street Debt

Service Reserve Deficiency Amount pursuant to the 301 West 53rd Street Supplemental Payment Guaranty.

### (4)  Defendants' Liability under the 301 West 53rd Street Recourse Guaranty

145.    Additionally, under the 301 West 53rd Street Recourse Guaranty, Guarantors are fully and personally liable for the Guaranteed Obligations under the 301 West 53rd Street Recourse Guaranty in a minimum amount of $1,149,016.73, which amount covers, but is not limited to, the Deferred Senior Mezzanine Origination Fee (as defined in the 301 West 53rd Street Loan Agreement) as of the date of the 301 West 53rd Street Recourse Guaranty Demand (as defined below) (the "**Guarantors' Liability on the 301 West 53rd Street Recourse Guaranty**").

146.    By correspondence dated July 17, 2020, Original Lender notified the Guarantors that a portion of the Guarantors' Liability on the 301 West 53rd Street Recourse Guaranty covering the Deferred Senior Mezzanine Origination Fee (and interest thereon) was then due and made demand on Guarantors for payment in full of such amount (the "**301 West 53rd Street Recourse Guaranty Demand**"). A copy of 301 West 53rd Street Recourse Guaranty Demand is attached hereto as Exhibit NN.

147.    As of the date hereof, Guarantors' Liability on the 301 West 53rd Street Recourse Guaranty remains unpaid.

### COUNT ONE:
### ENFORCEMENT OF THE 88 LEXINGTON AVENUE PAYMENT GUARANTY

148.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein

149.     As described above, Plaintiff is entitled to immediate payment of all amounts due under the 88 Lexington Avenue Payment Guaranty in a minimum amount of $1,383,500.00, exclusive of interest and costs.

150.     Guarantors directly benefitted from the Plaintiff's predecessor making the 88 Lexington Avenue Loan to 88 Lexington Avenue Borrower.

151.     Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 88 Lexington Avenue Payment Guaranty.

152.     By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 88 Lexington Avenue Payment Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

## COUNT TWO:
## ENFORCEMENT OF THE 88 LEXINGTON AVENUE CARRYING COSTS GUARANTY

153.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein

154.     As described above, Plaintiff is entitled to immediate payment of all amounts due under the 88 Lexington Avenue Carrying Costs Guaranty in a minimum amount of $6,560,408.75, exclusive of interest and costs.

155.     Guarantors directly benefitted from the Plaintiff predecessor's making the 88 Lexington Avenue Loan to 88 Lexington Avenue Borrower.

156.     Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 88 Lexington Avenue Carrying Costs Guaranty.

157.     By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 88 Lexington Avenue Carrying Costs Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

### COUNT THREE:
### ENFORCEMENT OF THE 88 LEXINGTON AVENUE SUPPLEMENTAL PAYMENT GUARANTY

158.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein.

159.     As described above, Plaintiff is entitled to immediate payment of all amounts due under the 88 Lexington Avenue Supplemental Payment Guaranty in a minimum amount of $5,287,635.67, exclusive of interest and costs.

160.     Guarantors directly benefitted from the Plaintiff's predecessor making the 88 Lexington Avenue Loan to 88 Lexington Avenue Borrower.

161.     Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 88 Lexington Avenue Supplemental Payment Guaranty.

162.     By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 88 Lexington Avenue Supplemental Payment Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

### COUNT FOUR:
### ENFORCEMENT OF THE 88 LEXINGTON AVENUE RECOURSE GUARANTY

163.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein.

164.    As described above, Plaintiff is entitled to immediate payment of all amounts due under the 88 Lexington Avenue Recourse Guaranty in a minimum amount of $1,670,063.54, exclusive of interest and costs.

165.    Guarantors directly benefitted from the Plaintiff's predecessor making the 88 Lexington Avenue Loan to 88 Lexington Avenue Borrower.

166.    Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 88 Lexington Avenue Recourse Guaranty.

167.    By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 88 Lexington Avenue Recourse Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

## COUNT FIVE:
## ENFORCEMENT OF THE 90 LEXINGTON AVENUE PAYMENT GUARANTY

168.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein.

169.    As described above, Plaintiff is entitled to immediate payment of all amounts due under the 90 Lexington Avenue Payment Guaranty in a minimum amount of $832,000.00, exclusive of interest and costs.

170.    Guarantors directly benefitted from the Plaintiff's predecessor making the 90 Lexington Avenue Loan to 90 Lexington Avenue Borrower.

171.    Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 90 Lexington Avenue Payment Guaranty.

172.    By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 90 Lexington Avenue Payment

Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

## COUNT SIX:
### ENFORCEMENT OF THE 90 LEXINGTON AVENUE CARRYING COSTS GUARANTY

173.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein

174.    As described above, Plaintiff is entitled to immediate payment of all amounts due under the 90 Lexington Avenue Carrying Costs Guaranty in a minimum amount of $3,855,184.74, exclusive of interest and costs.

175.    Guarantors directly benefitted from the Plaintiff's predecessor making the 90 Lexington Avenue Loan to 90 Lexington Avenue Borrower.

176.    Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 90 Lexington Avenue Carrying Costs Guaranty.

177.    By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 90 Lexington Avenue Carrying Costs Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

## COUNT SEVEN:
### ENFORCEMENT OF THE 90 LEXINGTON AVENUE SUPPLEMENTAL PAYMENT GUARANTY

178.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein.

179.    As described above, Plaintiff is entitled to immediate payment of all amounts due under the 90 Lexington Avenue Supplemental Payment Guaranty in a minimum amount of $3,208,249.51, exclusive of interest and costs.

180.    Guarantors directly benefitted from the Plaintiff's predecessor making the 90 Lexington Avenue Loan to 90 Lexington Avenue Borrower.

181.    Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 90 Lexington Avenue Supplemental Payment Guaranty.

182.    By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 90 Lexington Avenue Supplemental Payment Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

## COUNT EIGHT:
## ENFORCEMENT OF THE 90 LEXINGTON AVENUE RECOURSE GUARANTY

183.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein.

184.    As described above, Plaintiff is entitled to immediate payment of all amounts due under the 90 Lexington Avenue Recourse Guaranty in a minimum amount of $1,004,528.06, exclusive of interest and costs.

185.    Guarantors directly benefitted from the Plaintiff's predecessor making the 90 Lexington Avenue Loan to 90 Lexington Avenue Borrower.

186.    Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 90 Lexington Avenue Recourse Guaranty.

187.    By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 90 Lexington Avenue Recourse

Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

## COUNT NINE:
## ENFORCEMENT OF THE 235 WEST 75TH STREET PAYMENT GUARANTY

188.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein

189.    As described above, Plaintiff is entitled to immediate payment of all amounts due under the 235 West 75th Street Payment Guaranty in a minimum amount of $1,833,000.00, exclusive of interest and costs.

190.    Guarantors directly benefitted from the Plaintiff's predecessor making the 235 West 75th Street Loan to 235 West 75th Street Borrower.

191.    Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 235 West 75th Street Payment Guaranty.

192.    By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 235 West 75th Street Payment Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

## COUNT TEN:
## ENFORCEMENT OF THE 235 WEST 75TH STREET CARRYING COSTS GUARANTY

193.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein

194.    As described above, Plaintiff is entitled to immediate payment of all amounts due under the 235 West 75th Street Carrying Costs Guaranty in a minimum amount of $8,147,412.33, exclusive of interest and costs.

195.     Guarantors directly benefitted from the Plaintiff's predecessor making the 235 West 75th Street Loan to 235 West 75th Street Borrower.

196.     Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 235 West 75th Street Carrying Costs Guaranty.

197.     By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 235 West 75th Street Carrying Costs Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

## COUNT ELEVEN:
## ENFORCEMENT OF THE 235 WEST 75TH STREET SUPPLEMENTAL PAYMENT GUARANTY

198.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein.

199.     As described above, Plaintiff is entitled to immediate payment of all amounts due under the 235 West 75th Street Supplemental Payment Guaranty in a minimum amount of $6,967,983.60, exclusive of interest and costs.

200.     Guarantors directly benefitted from the Plaintiff's predecessor making the 235 West 75th Street Loan to 235 West 75th Street Borrower.

201.     Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 235 West 75th Street Supplemental Payment Guaranty.

202.     By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 235 West 75th Street Supplemental Payment Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

## COUNT TWELVE:
## ENFORCEMENT OF THE 235 WEST 75TH STREET RECOURSE GUARANTY

203.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein.

204.    As described above, Plaintiff is entitled to immediate payment of all amounts due under the 235 West 75th Street Recourse Guaranty in a minimum amount of $2,212,951.44, exclusive of interest and costs.

205.    Guarantors directly benefitted from the Plaintiff's predecessor making the 235 West 75th Street Loan to 235 West 75th Street Borrower.

206.    Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 235 West 75th Street Recourse Guaranty.

207.    By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 235 West 75th Street Recourse Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

## COUNT THIRTEEN:
## ENFORCEMENT OF THE 301 WEST 53RD STREET PAYMENT GUARANTY

208.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein

209.    As described above, Plaintiff is entitled to immediate payment of all amounts due under the 301 West 53rd Street Payment Guaranty in a minimum amount of $951,500.00, exclusive of interest and costs.

210.    Guarantors directly benefitted from the Plaintiff's predecessor making the 301 West 53rd Street Loan to 301 West 53rd Street Borrower.

211.    Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 301 West 53rd Street Payment Guaranty.

212.    By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 301 West 53rd Street Payment Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

**COUNT FOURTEEN:**
**ENFORCEMENT OF THE 301 WEST 53RD STREET CARRYING COSTS GUARANTY**

213.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein

214.    As described above, Plaintiff is entitled to immediate payment of all amounts due under the 301 West 53rd Street Carrying Costs Guaranty in a minimum amount of $1,999,661.28, exclusive of interest and costs.

215.    Guarantors directly benefitted from the Plaintiff's predecessor making the 301 West 53rd Street Loan to 301 West 53rd Street Borrower.

216.    Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 301 West 53rd Street Carrying Costs Guaranty.

217.    By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 301 West 53rd Street Carrying Costs Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

**COUNT FIFTEEN:**
**ENFORCEMENT OF THE 301 WEST 53RD STREET SUPPLEMENTAL PAYMENT**
**GUARANTY**

218.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein.

219.    As described above, Plaintiff is entitled to immediate payment of all amounts due under the 301 West 53rd Street Supplemental Payment Guaranty in a minimum amount of $1,794,003.25, exclusive of interest and costs.

220.    Guarantors directly benefitted from the Plaintiff's predecessor making the 301 West 53rd Street Loan to 301 West 53rd Street Borrower.

221.    Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 301 West 53rd Street Supplemental Payment Guaranty.

222.    By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 301 West 53rd Street Supplemental Payment Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

### COUNT SIXTEEN:
### ENFORCEMENT OF THE 301 WEST 53RD STREET RECOURSE GUARANTY

223.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 128 above as if fully repeated and set forth herein.

224.    As described above, Plaintiff is entitled to immediate payment of all amounts due under the 301 West 53rd Street Recourse Guaranty in a minimum amount of $1,149,016.73, exclusive of interest and costs.

225.    Guarantors directly benefitted from the Plaintiff's predecessor making the 301 West 53rd Street Loan to 301 West 53rd Street Borrower.

226.    Guarantors have failed to pay to the Plaintiff the amounts, including interest and costs, due under the 301 West 53rd Street Recourse Guaranty.

227.     By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the 301 West 53rd Street Recourse Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' liability.

**CONCLUSION**

**WHEREFORE**, Plaintiff prays for judgment in favor of Plaintiff and against Defendants, jointly and severally, as follows:

A.     Judgment against Guarantors to the extent of the Guarantors' Liability on the 88 Lexington Avenue Payment Guaranty;

B.     Judgment against Guarantors to the extent of the Guarantors' Liability on the 88 Lexington Avenue Carrying Costs Guaranty;

C.     Judgment against Guarantors to the extent of the Guarantors' Liability on the 88 Lexington Avenue Supplemental Payment Guaranty;

D.     Judgment against Guarantors to the extent of the Guarantors' Liability on the 88 Lexington Avenue Recourse Guaranty;

E.     Judgment against Guarantors to the extent of the Guarantors' Liability on the 90 Lexington Avenue Payment Guaranty;

F.     Judgment against Guarantors to the extent of the Guarantors' Liability on the 90 Lexington Avenue Carrying Costs Guaranty;

G.     Judgment against Guarantors to the extent of the Guarantors' Liability on the 90 Lexington Avenue Supplemental Payment Guaranty;

H.     Judgment against Guarantors to the extent of the Guarantors' Liability on the 90 Lexington Avenue Recourse Guaranty;

I.     Judgment against Guarantors to the extent of the Guarantors' on the 235 West 75th Street Payment Guaranty;

J.     Judgment against Guarantors to the extent of the Guarantors' Liability on the 235 West 75th Street Carrying Costs Guaranty;

K.     Judgment against Guarantors to the extent of the Guarantors' Liability on the 235 West 75th Street Supplemental Payment Guaranty;

L.     Judgment against Guarantors to the extent of the Guarantors' Liability on the 235 West 75th Street Recourse Guaranty;

M.     Judgment against Guarantors to the extent of the Guarantors' Liability on the 301 West 53rd Street Payment Guaranty;

N.     Judgment against Guarantors to the extent of the Guarantors' Liability on the 301 West 53rd Street Carrying Costs Guaranty;

O.     Judgment against Guarantors to the extent of the Guarantors' Liability on the 301 West 53rd Street Supplemental Payment Guaranty;

P.     Judgment against Guarantors to the extent of the Guarantors' Liability on the 301 West 53rd Street Recourse Guaranty;

Q.     Prejudgment and post-judgment interest;

R.     Reasonable attorneys' fees;

S.     Compensatory damages, including, but not limited to, default interest, and late fees;

T.     Total damages in an amount to be determined at trial but presently believed to be in excess of $48,857,098.90; and

U.     Such other and further relief as the Court deems just and appropriate.

Dated:  New York, New York
         March 23, 2021

**DECHERT LLP**

By: */s/* Gary J. Mennitt
Gary J. Mennitt
Pat Andriola

Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Tel.: (212) 698-3500
Fax: (212) 698-3599
gary.mennitt@dechert.com
pat.andriola@dechert.com

*Attorneys for Plaintiff CCO Condo*
*Portfolio (AZ) Junior Mezzanine, LLC*