UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CCO CONDO PORTFOLIO (AZ) JUNIOR MEZZANINE, LLC,

                Plaintiff,

– against –

ZIEL FELDMAN *and* HFZ CAPITAL GROUP LLC,

                Defendants.

**OPINION & ORDER**

21 Civ. 2508 (ER)

Ramos, D.J.:

CCO Condo Portfolio (AZ) Junior Mezzanine, LLC ("CCO Condo") brought this action against Ziel Feldman and HFZ Capital Group LLC on March 23, 2021 seeking to recover amounts due under a loan for which Defendants served as guarantors. Doc. 1. CCO Condo moves for pre-discovery summary judgment on its claims. Doc. 25. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

**I.  BACKGROUND**

In November 2018, CCO Condo's predecessor, CCO Condo Portfolio (NY) Mezzanine, LLC ("CCO NY") made four junior mezzanine loans related to four condominium projects in Manhattan owned by Defendants' affiliates.[1] Doc. 31 ¶ 1. Defendants, in a total of 20 guaranties, jointly and severally guaranteed punctual and complete payment of principal and interest on the loans as well as certain obligations related to carrying costs, deficiency amounts, and recourse obligations. *Id.* ¶¶ 1–2.

---

[1] The loans were for the following principal amounts: $24,960,571 for 88 Lexington Avenue; $15,439,895 for 90 Lexington Avenue; $38,755,787 for 235 West 75th Street; and $10,138,300 for 301 West 53rd Street. Doc. 31 ¶¶ 13, 45, 76, 109.

The guaranty agreements noted, in relevant part, that Defendants agreed:

> that [their] obligations under this Guaranty shall not be released, limited, diminished, impaired, reduced, discharged or adversely affected by any of the following, and waives any common law, equitable, statutory or other rights . . . which Guarantor might otherwise have as a result of . . .
>
> (g) . . . [A]ny sale or transfer of all or part of the Collateral . . . [or;]
>
> (m) Any release, substitution, surrender, exchange, subordination, deterioration, waste, loss or impairment by [Defendants] (excluding [its] gross negligence and willful misconduct) of any collateral, property or security, at any time existing in connection with, or assuring or securing payment of, all or any part of the Loan or Guaranteed Obligations[.]

Section 2.1, Doc. 26-10 at 7–8.

In November 2019, all four borrowers defaulted under their loans. Doc. 31 ¶ 3. CCO NY sent to Defendants notices of default and notices of demand for the amounts due. *Id.* CCO NY assigned its interest in the loans to CCO Condo on September 1, 2020. *Id.* ¶ 4.

CCO Condo issued a notice of sale of the collateral (interest in the four properties) on December 10, 2020, with the sale scheduled for January 7, 2021. *Id.* ¶¶ 167, 179. The sale was advertised for seven consecutive days in the New York Times from December 17, 2021 through December 23, 2020. *Id.* ¶ 181. It was also advertised in the New York Post and New York Daily News on December 22, 2020 as well as in the New York Daily News on December 29, 2020. *Id.* ¶ 182. Bidders were required to provide an opening deposit of $500,000 as well as a second deposit of 5% of the bid, if selected as the winner. *Id.* ¶¶ 191–92. For the sale, CCO Condo retained Newmark & Company Real Estate, Inc., a commercial real estate advisory firm with expertise in Uniform Commercial Code ("UCC") sales, and Mannion Auctions, LLC, one of the largest and most experienced UCC auction houses in New York. *Id.* ¶¶ 144–45, 148. Prior to the sale, which had originally been planned for November 12, 2020, CCO Condo was sued in the New York Supreme Court by Defendant HFZ Capital, among others, based on

allegations that the planned sale was commercially unreasonable. *Id.* ¶¶ 150–51, 155. Justice Ostrager ultimately held that the sale terms as initially planned were commercially unreasonable but lifted the temporary restraining order that was in place and advised that the sale could go forward in compliance with the UCC and new terms to which CCO Condo agreed. *Id.* ¶ 166; Doc. 26-86. Defendants also agreed in the state case that

> any foreclosure sale conducted in accordance with the following provisions shall be considered a commercially reasonable sale . . . and hereby irrevocably waive[] any right to contest any such sale:
>
> i. [CCO Condo] conducts the foreclosure sale in the State of New York;
>
> ii. The foreclosure sale is conducted in accordance with the laws of the State of New York;
>
> iii. Not more than thirty (30) days before, and not less than fifteen (15) days in advance of the foreclosure sale, [CCO Condo] notifies Pledgor at the address set forth herein of the time and place of such foreclosure sale;
>
> iv. The foreclosure sale is conducted by an auctioneer licensed in the State of New York and is conducted in front of the New York Supreme Court located in New York City or such other New York State Court having jurisdiction over the Collateral on any Business Day between the hours of 9 a.m. and 5 p.m.;
>
> v. The notice of the date, time and location of the foreclosure sale is published in the NEW YORK TIMES or WALL STREET JOURNAL . . .; and
>
> vi. [CCO Condo] sends notification of the foreclosure sale to all secured parties identified as a result of a search of the UCC financing statement in the filing offices located in the State of Delaware . . . .

Doc. 31 ¶ 173.

The parties agreed to a stipulation of discontinuance with prejudice of the state court action on January 6, 2021. Doc. 26-94. That stipulation stated that it "shall not be read to impair any right or ability to bring any action or proceeding, or the raising any defense [*sic*], that

challenges the commercial reasonableness of any future sale, transfer or disposition of the membership interests that are the subject of this action[.]" *Id.* at 2.

The sale ultimately went forward the following day, on January 7, 2021, with CCO Condo submitting the prevailing bid of $65 million for interests in all four properties, but the proceeds were inadequate to satisfy the loans. Doc. 31 ¶¶ 8, 198–200.

It is not disputed that Defendants have failed to meet their obligations as guarantors to repay the loans. *Id.* ¶ 6. CCO Condo has calculated that Defendants owe a total of $86,350,220.27, comprising both the amounts owed under the guaranty as well as attorneys' fees and costs. *Id.* ¶ 141. CCO Condo filed this suit on March 23, 2021 seeking the amount due. Doc. 1.

The primary dispute between the parties is whether the sale of the collateral was commercially reasonable in accordance with the stipulation of discontinuance in the state court action, which expressly allowed Defendants to challenge the reasonableness of "any future sale." Defendants dispute that the sale was commercially reasonable due to the timing and advertising of the sale during the winter holiday season and ongoing COVID-19 pandemic as well as the language used in the ads, the high amounts of money required as deposits, the "leap frog" provision allegedly allowing CCO Condo to override the winning bid,[2] and the perceived below-market final sale price. *See* Doc. 32 at 26–31. CCO Condo moves for summary judgment for a determination that it is entitled to recover under the guaranties. Defendants request that the case proceed to discovery to resolve these disputes.

---

[2] Doc. 26-87 at 25–26, the "Notification of Disposition of Collateral," contains the text of this provision, showing that CCO Condo could only designate itself as the back-up bidder and could not in fact "leap frog" the winning bid.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

### III. DISCUSSION

Where "a creditor seeks summary judgment upon a written guaranty, the creditor need prove no more than an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guarantee." *HSH Nordbank Ag New York Branch v. Swerdlow*, 672 F. Supp. 2d 409, 417 (S.D.N.Y. 2009) (quoting *Kensington House Co. v. Oram*, 739 N.Y.S.2d 572, 572 (N.Y. App. Div. 2002), *aff'd sub nom. HSH Nordbank AG New York Branch v. St.*, 421 F. App'x 70 (2d Cir. 2011).

*1. Compliance with Local Rule 56.1*

As an initial matter, CCO Condo argues that Defendants have failed to comply with Local Rule 56.1. To assist the Court in its determination as to whether there exist any genuine issues of material fact, Local Rule 56.1 requires a party moving for summary judgment to submit a statement of the material facts that it contends are not genuinely in dispute, Local R. 56.1(a), and requires the opposing party to submit a statement specifically responding to the assertion of each purported undisputed fact by the movant. Local R. 56.1(b); *see also Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties."). Each of the parties' respective statements of material fact must be supported by a citation to admissible evidence in the record. Local R. 56.1(d); *see also* Fed. R. Civ. P. 56(c)(1)(A) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). Statements of material fact set forth by the moving party will be deemed admitted for purposes of the motion "unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Rule 56.1(c).

Here, CCO Condo properly filed a 56.1 Statement in support of its motion. Doc. 28. Defendants filed a response, but many of their denials are not supported by citations to evidence in the record. *See, e.g.*, Doc. 31 ¶¶ 25, 87–90, 119–20, 122, 124, 135, 139–41, 144–47, 175, 184–85, 190. In particular, Defendants dispute the amounts owed on the basis that CCO Condo has not provided calculations supporting those amounts. In other words, Defendants complain that CCO Condo has not "shown its work." However, CCO Condo has in fact submitted an affidavit by Adam Gibbons, the manager of the junior mezzanine loans, in which he attached the loan documents and attested to the amounts owed.[3] *See* Doc. 26. Defendants also do not provide their own counter-calculations. Accordingly, these statements are deemed admitted for purposes of this motion. Local R. 56.1(c); *see also T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").

2. *Compliance with Federal Rule 56(d)*

CCO Condo further argues that "[a] party resisting summary judgment on the ground that it needs additional discovery in order to defeat the motion must submit an affidavit pursuant to Federal Rule of Civil Procedure 56(d) . . . showing: '(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in

---

[3] Such evidence is admissible and satisfies Federal Rule 56(c)(4)'s personal knowledge requirement. *See Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, No. 03 Civ. 8554 (DCP), 2008 WL 465169, at *1 n.4, 8 (S.D.N.Y. Feb. 6, 2008) (holding that plaintiff lender, suing defendant under unpaid guaranties, "submitted admissible evidence, in the form of a declaration by its Chief Financial Officer … of the amount it guaranteed on the twelve loans … especially as [guarantors] have not submitted any evidence that might raise even the slightest doubt" otherwise) (granting summary judgment for plaintiff lenders "for the amount of $107,640,070.92 plus additional interest and costs"), *aff'd*, 347 F. App'x 672 (2d Cir. 2009).

those efforts.'" *Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11, 13 (2d Cir. 2013) (summary order) (quoting *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995)). "A reference to Rule 56([d]) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56([d]) affidavit, . . . and the failure to file an affidavit under Rule 56([d]) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate[.]" *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994) (internal citations omitted).

While courts do sometimes grant summary judgment on this basis alone, "[t]here is a critical distinction . . . between cases where a litigant opposing a motion for summary judgment requests a stay of that motion to conduct *additional* discovery and cases where that same litigant opposes a motion for summary judgment on the ground that it is entitled to an opportunity to *commence* discovery with respect to [the non-movant's] claims." *Desclafani v. Pave–Mark Corp.*, No. 07 Civ. 4639 (HBP), 2008 WL 3914881, at *7 (S.D.N.Y. Aug. 22, 2008) (emphases and alterations in original) (quoting *Crystalline H2O, Inc. v. Orminski*, 105 F. Supp. 2d 3, 6–7 (N.D.N.Y. 2000)); *see also Hodge v. Perilli*, No. 06 Civ. 2480 (PAC) (MHD), 2010 WL 2910158, at *9 n.15 (S.D.N.Y. July 12, 2010) (excusing "the *pro se* plaintiff's failure to file the required affidavit in this case, and instead interpret[ing] his letters to the court regarding defendants' purported discovery omissions . . . to raise a request for Rule 56(f) relief."), *report and recommendation adopted*, No. 06 Civ. 2480 (PAC) (MHD), 2010 WL 3932368 (S.D.N.Y. Sept. 30, 2010).[4]

---

[4] CCO Condo argues that this is not such a case, as Defendants already obtained discovery in the state court action, making any further discovery in this action "additional discovery." *Desclafani v. Pave–Mark Corp.*, No. 07 Civ. 4639 (HBP), 2008 WL 3914881, at *7 (S.D.N.Y. Aug. 22, 2008) (emphasis omitted). However, while the Defendants do not dispute that "the parties exchanged documents and submitted direct testimony affidavits" in the state court action, Doc. 31 ¶ 162, it is still the case that formal discovery has not been exchanged in this action, and the Court is not in a position to evaluate whether the materials exchanged in state court fully encompass the discovery Defendants are entitled to seek in this case.

Here, the Court interprets Defendants' briefing in opposition as meeting the requirements of Rule 56(d), where, as here, no opportunity for discovery occurred prior to the motion.  *See Kelly v. Tan*, No. 11 Civ. 6614 (CJS), 2013 WL 4811913, at *4 (W.D.N.Y. Sept. 10, 2013) ("Although Plaintiff has not raised the issue, the Court is mindful that no discovery has yet taken place in this action, since [o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery. Although the Court could deny the motion on this basis alone, it finds that the application should be denied on the merits in any event." (internal quotation marks and citation omitted)); *see also Sollazzo v. Just Salad Restaurant*, No. 15 Civ. 252 (ER), 2016 WL 1071031, at *10 (S.D.N.Y. Mar. 17, 2016) (reaching same conclusion).  Accordingly, the Court declines to grant the motion on this basis alone.

3. *Commercial Reasonableness*

In Defendants' pre-motion letter opposing CCO Condo's request for leave to move for summary judgment, Doc. 21, they cited to Section 2.1(m) of the guaranty agreement, in which they contractually agreed:

> that [their] obligations under this Guaranty shall not be released, limited, [etc.,] by any of the following, and waives any common law, equitable, statutory or other rights . . . which Guarantor might otherwise have as a result of . . . (m) Any release, substitution, surrender, exchange, subordination, deterioration, waste, loss or impairment by [CCO Condo] (excluding [its] gross negligence and willful misconduct) of any collateral, property or security, at any time existing in connection with, or assuring or securing payment of, all or any part of the Loan or Guaranteed Obligations[.]

Section 2(m), Doc. 26-10 at 7–9.  Defendants thus argued that this section of the guaranty agreement contained a carve-out of the limitations of their liability, leaving them liable as guarantors except where CCO Condo acted grossly negligent or with willful misconduct regarding the collateral.  CCO Condo in its motion argues that this carve-out does not apply, as a

finding of gross negligence and willful misconduct on its part during the sale is precluded under collateral estoppel by the state court's ruling regarding the sale.

However, in their brief opposing the motion, Defendants now take the position that Section 2.1(m) is not applicable here, as 2.1(m) deals with "impairment" of collateral as opposed to the sale of collateral, which is covered by Section 2.1(g).  Section 2.1(g) states that Defendants' obligations to pay under the guaranty agreement shall not be released as a result of "any sale or transfer of all or part of the Collateral[.]" *Id.* at 8.  As this section does not contain a carve-out for gross negligence and willful misconduct, Defendants argue they need not make such a showing.  Instead, Defendants look to N.Y. U.C.C. § 9-610(b), which requires that "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable."  They further argue that "the defense of the commercial reasonableness of the disposition of the collateral is one which may not be waived[.]" *Marine Midland Bank v. CMR Indus., Inc.*, 559 N.Y.S.2d 892 (N.Y. App. Div. 1990).  Lastly, they point to the stipulation of dismissal in the state court action, in which CCO Condo agreed that the defense of commercial reasonableness could be asserted in any future sale. Doc. 26-94 at 2.  Since this defense is available to them and they have argued against the commercial reasonableness of the sale, Doc. 31 ¶ 177, they argue, the Court should deny summary judgment and allow discovery to go forward on the question of whether the sale was commercially reasonable, a fact-intensive inquiry.  *See, e.g.*, *BancAmerica Priv. Brands, Inc. v. Marine Gallery, Inc.*, 550 N.Y.S.2d 720, 721 (N.Y. App. Div. 1990) ("As there are triable issues of fact concerning whether the plaintiff disposed of the collateral in a commercially reasonable manner, the Supreme Court improperly awarded summary judgment to the plaintiff").

CCO Condo responds that the question of the commercial reasonableness of the sale goes only to the issue of damages and not to liability.  Their argument is supported by *Overseas Priv. Inv. Corp. v. Furman*, No. 10 Civ. 7096 (RJS), 2012 WL 967458, at *11 (S.D.N.Y. Mar. 14, 2012).  In *Overseas*, the defendant guarantors signed unconditional guaranties similar to those here.[5]  The court acknowledged that the guarantors may not waive the defense of commercial reasonableness, but nonetheless found that this question was not a bar to summary judgment on the question of liability, as the commercial reasonableness of the sale is only relevant to the amount of damages.  *Id.*

The Court agrees with CCO Condo and the reasoning in *Overseas*.  Although Defendants have not waived the defense of commercial reasonableness in their stipulation of discontinuance, this does not change the fact that they are ultimately liable as guarantors—as they acknowledge.  If the sale was not commercially reasonable, it might affect the amount Defendants must ultimately pay, but it would not change the fact that Defendants would be liable for any shortfall.  Accordingly, Defendants are liable under the guaranty agreements.

   4. *Collateral Estoppel*

The only remaining issue is that of damages.  As explained above, CCO Condo has asserted, and Defendants have not properly rebutted, that a total of $86,350,220.27 is owed for both the amounts due under the guaranties as well as attorneys' fees and costs.  Doc. 31 ¶ 141.  However, there remains a legal question as to whether the sale of collateral leading to the calculation of this amount owed is commercially reasonable.  *See Overseas*, 2012 WL 967458, at *11 (analyzing separately the question of commercial reasonableness after finding Defendants

---

[5] Defendants have waived "any common law, equitable, statutory or other rights" associated with the collateral sale in Section 2.1(g) of the guaranty agreement.  Doc. 26-10 at 8; *compare Overseas Priv. Inv. Corp. v. Furman*, No. 10 Civ. 7096 (RJS), 2012 WL 967458, at *11 (S.D.N.Y. Mar. 14, 2012) (defendants waived "any right, claim or defense . . . that the Guarantor may have under or in respect of this Guaranty.").

liable under guaranty agreements).  CCO Condo argues that Defendants are collaterally estopped from making arguments regarding the commercial reasonableness of the sale due to the outcome of the earlier state court action.

CCO Condo argues that the state court action bars a defense of commercial reasonableness because it complied with the court's order in that action, which was ultimately dismissed with prejudice.  In that action, Justice Ostrager found the originally-scheduled collateral sale to be commercially unreasonable but allowed CCO Condo to notice a new UCC sale in accordance with the order and agreed-upon terms.  Doc. 26-86.  CCO Condo asserts the parties voluntarily dismissed the action with prejudice on January 6, 2021 and it then modified its sale, which took place on January 7, 2021, to comply with the order.  As the plaintiffs in that action did not seek further redress regarding the sale before Justice Ostrager, CCO Condo argues that they are barred from doing so now.

In response, Defendants argue that New York law states that a party does not waive its right to contest the commercial reasonableness of a sale by failing to seek relief before the sale occurs.  *See Atlas MF Mezzanine Borrower, LLC v. Macquarie Texas Loan Holder LLC*, 105 N.Y.S.3d 59, 68 (N.Y. App. Div. 2019) ("a debtor may seek to enjoin the sale . . . before the sale occurred.  However, after disposition of the collateral, a debtor may seek money damages[.]").  Further, Defendants argue that Justice Ostrager's order did not make any finding regarding the terms of the second sale, but rather directed CCO Condo to conduct the sale in accordance with the UCC and the agreed-upon terms.  Doc. 26-86 at 4.  Lastly, Defendants point to the explicit terms of the stipulation of dismissal in the state court action, which stated that it "shall not be read to impair any right or ability to bring any action or proceeding, or the raising any defense

[*sic*], that challenges the commercial reasonableness of any future sale, transfer or disposition of the membership interests that are the subject of this action[.]" Doc. 26-94 at 2.

The Court agrees with Defendants. "Collateral estoppel . . . holds that, as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive on the issues of fact and questions of law necessarily decided therein in any subsequent action." *Vargas v. City of New York*, No. 01 Civ. 7093 (LAP), 2008 WL 361090, at *4 (S.D.N.Y. Feb. 7, 2008) (internal quotation marks, citations, and alterations omitted). Collateral estoppel is applicable only if (1) "there is an identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and (2) the party or one in privity had "a full and fair opportunity to contest the decision now said to be controlling." *Staatsburg Water Co. v. Staatsburg Fire Dist.*, 527 N.E.2d 754, 756 (N.Y. 1988) (internal quotation marks and citation omitted). "The litigant seeking the benefit of collateral estoppel must demonstrate that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party . . . . The party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination." *Buechel v. Bain*, 766 N.E.2d 914 (N.Y. 2001). "[T]he fundamental inquiry is whether relitigation should be permitted in a particular case in light of . . . fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings." *Staatsburg*, 527 N.E.2d at 756 (citations omitted); *see also Buechel*, 766 N.E.2d at 919 ("The equitable doctrine of collateral estoppel is grounded in the facts and realities of a particular litigation, rather than rigid rules.").

Here, the question of whether the January 7, 2021 sale was commercially reasonable was not reached by Justice Ostrager's order. The order was forward-looking; it simply indicated what changes would need to be made for the sale to be conducted in a commercially reasonable manner. Whether the sale was in fact conducted in a commercially reasonable way was not something that Justice Ostrager was later asked to decide. There is thus no identity of necessarily decided issues. *See Staatsburg*, 527 N.E.2d at 756. CCO Condo's averments regarding compliance with the order are not sufficient to invoke collateral estoppel. Further, the language of the stipulation of dismissal[6] preserving the defense and Defendants' arguments regarding *Atlas*, which CCO Condo does not address, further counsel that Defendants should not now be barred from making their arguments regarding commercial reasonableness.

5. *Terms of the Sale*

The final question the Court must address is whether the terms of the sale were commercially reasonable. The undisputed facts of the sale are as follows:

- Defendants agreed that the foreclosure sale would be considered a commercially reasonable sale if conducted in accordance with certain agreed-upon terms, including that it be conducted in accordance with New York law. Doc. 31 ¶ 173.

- The notice of sale was issued on December 10, 2020, with the sale scheduled for January 7, 2021. *Id.* ¶¶ 167, 179.

- The sale was advertised for seven consecutive days in the New York Times from December 17, 2020 through December 23, 2020. *Id.* ¶ 181. It was also advertised in the New York Post and New York Daily News on December 22, 2020 as well as in the New York Daily News on December 29, 2020. *Id.* ¶ 182.

---

[6] CCO Condo argues that "[a] stipulation dismissing an action with prejudice can have the preclusive effect of *res judicata* . . . not only as to the matters actually litigated in the previous action, but as to all relevant issues which could have been but were not raised and litigated in the suit." *Samuels v. N. Telecom, Inc.*, 942 F.2d 834, 836 (2d Cir. 1991) (internal quotation marks and citations omitted). However, this principle only "bars future suits brought by plaintiff upon the same cause of action," *id.* (quoting *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir.1986)). Here, the actual sale is entirely separate from the sale as originally planned and on which Justice Ostrager issued his ruling, and litigation regarding the second sale is in no way precluded by the earlier litigation challenging the first planned sale.

- Bidders were required to provide an opening deposit of $500,000 as well as a second deposit of 5% of the bid, if selected as the winner. *Id.* ¶¶ 191–92.

- CCO Condo was the prevailing bidder with a bid of $65 million. *Id.* ¶¶ 199–200.

With these facts in mind, the Court must decide whether there is a triable issue of fact as to whether the sale was commercially reasonable. The Court holds that there is. Under Article 9 of the New York UCC, "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." N.Y. U.C.C. Law § 9-610(b). A disposition is commercially reasonable if it is made: "(1) in the usual manner on any recognized market; (2) at the price current in any recognized market at the time of the disposition; or (3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." *Id.* § 9-627(b). Commercial reasonableness hinges "on the totality of the circumstances, including the good faith efforts of the creditor." *F.D.I.C. v. Wrapwell Corp.*, No. 93 Civ. 859 (CSH), 2002 WL 14365, at *9 (S.D.N.Y. Jan. 3, 2002). In conducting its inquiry, a court should consider "accepted business practices" in the particular industry "as a guide to what is most likely to protect both debtor and creditor." *Bankers Trust Co. v. J. V. Dowler & Co.*, 390 N.E.2d 766, 769 (N.Y. 1979).

The parties make myriad arguments as to the reasonableness *vel non* of the sale here, including the final sale price, the time and manner of the advertisements, the deposits, and the appropriateness of the terms of sale. Further, while Defendants dispute in their Rule 56.1 Counterstatement that the collateral for sale was clearly advertised as an LLC interest,[7] Doc. 31 ¶ 186, there is evidence to suggest that the advertising correctly described the interests as the "limited liability company interests" in the various properties. *See* Doc. 26-93 at 2.

---

[7] Justice Ostrager identified the description of the collateral as an issue in the first proposed sale. Specifically, he found that the sale was commercially unreasonable in part because "the defendant's marketing process created confusion in the marketplace concerning the interests that were for sale[.]" Doc 26-86 at 3.

At this stage in the proceedings and considering the fact-intensive nature of the inquiry which is meant to account for the totality of the circumstances, the Court holds that there are material issues of fact which cannot be resolved at pre-discovery summary judgment. *See, e.g.*, *BancAmerica Priv. Brands, Inc.*, 550 N.Y.S.2d at 721 ("As there are triable issues of fact concerning whether the plaintiff disposed of the collateral in a commercially reasonable manner, the Supreme Court improperly awarded summary judgment to the plaintiff").

### IV.     CONCLUSION

For all these reasons, CCO Condo's motion for summary judgment is GRANTED as to Defendants' liability but DENIED as to damages. The parties are directed to appear at a telephonic initial pre-trial conference on September 22, 2022 at 3 pm. The parties should dial 977-411-9748 and enter access code 3029857# when prompted. The parties should also jointly file on ECF a proposed case management plan and scheduling order, found on the Court's website, prior to the conference. The Clerk of Court is respectfully directed to terminate the motion, Doc. 25.

SO ORDERED.

Dated:     August 30, 2022
           New York, New York

_____
Edgardo Ramos, U.S.D.J.